## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. LAUREEN McGOWAN, | ) | |
| 2. JOY MASON, | ) | |
| 3. IVETTE FIGUEROA, | ) | |
| 4. MELISSA ESPINOSA, | ) | **Case No.  CIV-07-1168-HE** |
| 5. REGENIA OLDBEAR, | ) | |
| 6. KERRI JENNINGS | ) | |
| 7. KIMBERLY SUMMERS, | ) | **JURY TRIAL DEMANDED** |
| 8. DAWN RODGERS, | ) | |
| 9. BRENDA BROWN, | ) | **ATTORNEY'S LIEN CLAIMED** |
| 10. TERESA CHAGOLLA, | ) | |
| 11. DENA ESTRADA, | ) | |
| 12. JENNIFER SLINKEY, | ) | |
| 13. KIMBERLY SMITH, | ) | |
| 14. SUZANNE ELLIOTT, and | ) | |
| 15. TAMMIE BACA, all individuals, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | |
| | ) | |
| SHERIFF OF CUSTER COUNTY, | ) | |
| in his official capacity, | ) | |
| | ) | |
| **Defendant.** | ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs Laureen McGowan, Joy Mason, Ivette Figueroa, Melissa Espinosa, Regenia Oldbear,

Kerri Jennings, Kimberly Summers, Dawn Rodgers, Brenda Brown, Teresa Chagolla, Dena Estrada,

Jennifer Slinkey, Kimberly Smith, Suzanne Elliott and Tammie Baca (herein referred to individually

by name or collectively as "Plaintiffs"), by and through their attorneys, R. Thomas Seymour and

Scott A. Graham of Seymour& Graham, LLP, and Gregory Williams and D. Mitchell Garrett of

Garrett Law Office, P.C., and for their claims against the Defendant, allege and state as follows:

1.  From 1994 until he resigned on approximately April 16, 2008, in connection with pending

criminal charges against him, and at all times material to this Complaint, Mike Burgess was the

1

Sheriff of Custer County, Oklahoma (hereafter "Sheriff Burgess").

2.   Custer County, Oklahoma is a political subdivision of the State of Oklahoma (hereafter "County").

3.  Except as otherwise indicated, all acts and omissions referred to herein occurred within the two years prior to the filing of this Complaint.

4.  This Complaint arises under the Civil Rights statutes of the United States, specifically 42 U.S.C. § 1983.

5.  Pursuant to 42 U.S.C. § 1983, this Court has jurisdiction.

6.   All material allegations herein occurred within the Western District of Oklahoma, thereby making venue proper in this Court.

7.  The Sheriff of Custer County is, and Sheriff Burgess was during the time period at issue, the final policy maker for all material conduct of the Sheriff of Custer County and of the Sheriff's Office of Custer County.  There is no person who has authority over the Sheriff of Custer County, acting in his capacity as sheriff.  Both as to his own conduct and as to the conduct of his employees, because of his position as Sheriff of Custer County,  Sheriff Burgess' acts, customs, policies, practices, failure to train and failure to supervise his employees alleged herein are attributable to the County as well as to the Sheriff in his  official capacity.

8.  The Sheriff of Custer County is sued herein in his official capacity.

9.  Both within the two year statute of limitations, and for many years prior thereto, Sheriff Burgess has operated a sex-slave ring in Custer County, Oklahoma.  This sex-slave ring consists of (a) Sheriff Burgess' own acts of sexual depravity committed on persons subject to the supervision of his office and/or the Drug Court (defined below), and (b) Sheriff Burgess' operation of the Custer

County Jail as a den of sexual depravity, where employees of Sheriff Burgess could, and did:

    A.  Require female inmates to bare their breasts or otherwise be denied (one or more of) medicine, cigarettes, ice, telephone privileges, toilet paper, personal hygiene items (including sanitary napkins), additional quantities of food, and other items;

    B.  Require female inmates to bare their breasts in unison so as to give to various individuals what was commonly and leeringly referred to by Sheriff Burgess' employees as "the Custer County Welcome;"

    C.  Pinch the breasts of female inmates, with abandon;

    D.  Pinch the posteriors of female inmates, with abandon;

    E.  Grope female inmates;

    F.  Provide a constant patter of sexually harassing and sexually degrading comments;

    G.  Make it a point to stare at female inmates as they took showers;

    H.  Place themselves in situations and places where they could look at naked female inmates;

    I.  Provide and require female inmates to wear tight fitting sleeveless T-shirts, and men's boxer shorts, instead of regular orange jumpsuits;

    J.  Require female inmates to participate in "wet T-shirt" contests, or otherwise be denied one of more of medicine, cigarettes, ice, telephone privileges, toilet paper, personal hygiene items, and other matters; and

    K.  Psychologically and sexually intimidate, manipulate, degrade, harass, and assault female inmates, at will.

Not all employees of Sheriff Burgess engaged in the conduct described above, but all too many

3

did.

10.  All of the conduct alleged herein of Sheriff Burgess and of his identified employees was the exercise of state authority within the meaning of 42 U.S.C. § 1983.

11.  Custer County, Oklahoma and Washita County, Oklahoma have combined to form a drug court, pursuant to the statutes of the State of Oklahoma (hereafter "Drug Court").

12.  Pursuant to the statutes of the State of Oklahoma, the Sheriff of Custer County is charged with the duty of being the Custer County "gatekeeper" for making the initial determinations of which persons in Custer County shall be deemed eligible to participate in the Drug Court.

13.  Until recently, Sheriff Burgess has also served as a member of the Drug Court Team authorized by the statutes of the State of Oklahoma.

14.  Pursuant to the statutes of the State of Oklahoma as implemented by the Drug Court, in order for a person to be eligible for the special treatment afforded by the drug court program, the person must admit their guilt and receive a sentence which can be imposed if the drug court program requirements are not met (unless the person has been afforded a deferred prosecution, which is not applicable to any of Plaintiffs herein).

15.  Recognizing the extraordinary vulnerability of persons who are inmates of a county jail for any reason, as well as of persons under the supervision of the Drug Court, and the extraordinary opportunities of sheriffs and of employees of sheriffs to prey upon the vulnerability of such persons, the statutes of the State of Oklahoma specifically protect such persons by mandating that any state, federal, county, municipal or political subdivision employee who has sexual intercourse with a person under the supervision of the Drug Court or of the Sheriff's Office of Custer County is guilty of the crime of rape.  21 O.S. § 1111 (A) (7).  Just as is the case for sexual intercourse with underage

persons, consent is no defense to the crime of rape as described therein.

16.  Recognizing the extraordinary vulnerability of persons who are inmates of a county jail for any reason, as well as of persons under the supervision of the Drug Court, and the extraordinary opportunities of sheriffs and of employees of sheriffs to prey upon the vulnerability of such persons, the statutes of the State of Oklahoma specifically protect such persons by mandating that any state, federal, county, municipal or political subdivision employee who commits sodomy on a person under the supervision of the Drug Court or of the Sheriff's Office of Custer County is guilty of the crime of forcible sodomy. 21 O.S. § 888 (B) (4).  Just as is the case for sexual intercourse with underage persons, consent is no defense to the crime of forcible sodomy as described herein.

17.  Recognizing the extraordinary vulnerability of persons who are inmates of a county jail for any reason, as well as of persons under the supervision of the Drug Court, and the extraordinary opportunities of sheriffs and employees of sheriffs to prey upon the vulnerability of such persons, the statutes of the State of Oklahoma specifically protect such persons by mandating that any state, federal, county, municipal or political subdivision employee who commits sexual battery  on a person under the supervision of the Drug Court or of the Sheriff's Office of Custer County is guilty of the crime of sexual battery.  21 O.S. § 1123 (B).  Just as is the case for sexual intercourse with underage persons, consent is no defense to the crime of sexual battery as described herein.

18.  Sheriff Burgess has, personally, shamelessly engaged in an extended pattern of committing rape, sodomy and sexual battery of the kind identified herein, by and through asserting his authority as Sheriff of Custer County.

19.  In furtherance of his shameless pattern of rape, sodomy and sexual battery, Sheriff Burgess has further violated the statutes of the State of Oklahoma by committing the crime of blackmail, 21 O.S.

5

§ 1488, by obtaining sexual favors as the result of his threatening the identified Plaintiffs with, as the result of his serving as Sheriff of Custer County and/or as the result of his serving as a member of the Drug Court, causing the revocation of their participation in the Drug Court program, including, but not limited to, telling the identified Plaintiffs that he "got you into the program," and "I can get you out of the program and sent to prison" unless the sexual favors were provided.

20. Sheriff Burgess has established as the policy, custom, usage and practice of (a) the Sheriff of Custer County, (b) the Sheriff's Office of Custer County, and (c) (by virtue of his position as Sheriff of Custer County) Custer County, Oklahoma, that the Sheriff of Custer County is permitted to engage in rape, sodomy, sexual battery and blackmail as described herein, as the policy, custom, usage and practice of the Sheriff of Custer County, the Sheriff's Office of Custer County, and of Custer County, Oklahoma.

21. Sheriff Burgess has further established as the policy, custom, usage and practice of (a) the Sheriff of Custer County, (b) the Sheriff's Office of Custer County, and (c) (by virtue of his position as Sheriff of Custer County), Custer County, Oklahoma, that the employees of the Sheriff's Office of Custer County may, as a matter of the policy, custom, usage and practice of the Sheriff of Custer County and of Custer County, Oklahoma and/or as a matter of Sheriff Burgess' failure to train and failure to supervise those employees, commit sexual battery on inmates of the Custer County jail as well as commit all of the outrageous sexual advances, sexual harassment and sexual humiliation described herein.

22. Sheriff Burgess' acts of rape, sodomy, sexual battery and blackmail  described herein deprived the identified Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States to be free from unreasonable searches and seizures, their rights

6

under the Fifth and Fourteenth Amendments to the Constitution of the United States to be afforded

due process of law, and their rights under the Fifth and Fourteenth Amendments to the Constitution

of the United States to have equal protection of the law and thereby not suffer the sexual degradation

described herein.  A reasonable person would have known that Sheriff Burgess' acts of rape,

sodomy, sexual battery and blackmail described herein deprived the identified Plaintiffs of their

Constitutional rights as set forth in the preceding sentence.

23.    The acts of sexual battery, outrageous sexual advances, sexual harassment and sexual

humiliation committed by Sheriff Burgess' employees as described herein deprived the identified

Plaintiffs of  their rights under the Fourth and Fourteenth Amendments to the Constitution of the

United States to be free from unreasonable searches and seizures, and their rights under the Fifth and

Fourteenth Amendments to the Constitution of the United States to be afforded equal protection and

due process of law.   A reasonable person would have known that Sheriff Burgess' employees' acts

of sexual battery, outrageous sexual advances, sexual harassment and sexual humiliation  described

herein and/or his failure to train and failure to supervise his employees deprived the identified

Plaintiffs of their Constitutional rights as set forth in the preceding sentence.

24.    Sheriff Burgess and his identified employees' sexually degrading acts described herein were

committed with deliberate indifference to the Constitutional rights of Plaintiffs set forth herein, and

were the direct and proximate cause of Plaintiffs' damages.  A reasonable person would have known

these Constitutional rights were being violated as a result of the alleged conduct.

25.    Plaintiff Laureen McGowan, in the Spring of 2006, was in the Custer County Jail.  While there,

the depression from which she had been suffering (and for which she had  received prescription

medicine) worsened.  Ms. McGowan repeatedly asked to receive medication for her condition, but

the medication was denied with the excuse given that the Custer County Jail "couldn't afford it." As time wore on, Ms. McGowan was seen by a doctor who unequivocally told the Custer County Sheriff's Office that Ms. McGowan needed to receive her depression  medication.  Despite this medical opinion, the Custer County Sheriff's Office refused to provide the medication, on the grounds the Custer County Jail "couldn't afford it."  Ms. McGowan raised the matter directly with Sheriff Burgess as well as with the jailers.  Sheriff Burgess also refused to provide the medication on the grounds the Custer County Jail "couldn't afford it."

26. This refusal to provide Ms. McGowan medication which was medically necessary constituted a violation of Ms. McGowan's Fifth and Fourteenth Amendment rights to equal protection and due process and her Fourth and Fourteenth Amendment rights to be free from unreasonable seizure.   A reasonable person would have known of this violation of Ms. McGowan's Constitutional rights.

27. Sheriff Burgess and his employees were deliberately indifferent to a known medical need of Ms. McGowan, to-wit, her medical need for depression medicine.

28.  After Ms. McGowan was seen by a doctor whose opinion was that she needed to receive medication for her depression, and she continued to be refused the medication, Ms. McGowan continued to ask that she receive the medication.  As a result of her continuing to request the medication, Ms. McGowan was retaliated against in an utterly depraved manner.  Ms. McGowan was placed in an isolation cell, stripped of all of her clothes, denied a mattress, and given as her only clothing an extremely small and ill fitting see-through "gown" which did not cover her lower extremities and improperly exposed her breasts.

29.  While Ms. McGowan was in the isolation cell, Jailer John Doe, an employee of the Custer County Jail well known to Sheriff Burgess, committed sexual battery on Ms. McGowan by fondling

her breasts.

30.  While Ms. McGowan was in the isolation cell, Jailer John Doe turned the air conditioning down so that Ms. McGowan would be subjected to excessive cold while essentially naked in the cell.

31.  While Ms. McGowan was in the isolation cell, Jailer John Doe paraded male trustys in front of the cell and allowed those trustys to peer through the opening in the door so that they could ogle Ms. McGowan in her undressed state.

32.  While Ms. McGowan was in the isolation cell, Jailer John Doe continually peered through the opening in the door and tried to get Ms. McGowan to stand up so that he could see her better in her undressed state.

33.  Ms. McGowan, while Jailer John Doe and a male trusty were ogling her, cowered in the corner, begging for mercy, unable to cover up all of her body parts.

34.  Ms. McGowan's essentially undressed condition was perpetuated for a period of several hours before it finally was ended.

35.  In addition to the matters set forth above, Ms. McGowan's Constitutional rights were violated by Sheriff Burgess by being denied medicine and personal hygiene items because she would not bare her breasts on command of the jailers.

36.  The depravity set forth in Paragraphs 25 through 35 violated Ms. McGowan's Constitutional rights as set forth herein.

37.  The depravity set forth in Paragraphs 25 through 35 subjected Ms. McGowan to severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

38.  Plaintiff Joy Mason (hereafter "Ms. Mason") is a participant in the Drug Court program.

39. Sheriff Burgess committed rape, sodomy, sexual battery and blackmail on Ms. Mason on more than 30 occasions within the statute of limitations, telling her on more than one occasion that he got her into the Drug Court program and if she did not provide the required sexual favors, he would get her out of the program and sent immediately to prison.  In addition, on more than one occasion he threatened Ms. Mason that by causing her to be sent immediately to prison if she did not provide the required sexual favors, she would not ever be able to see her children until after they had grown up.

40. Sheriff Burgess called Ms. Mason  scores of times, and required that she call him.  After Sheriff Burgess' wife questioned calls on his cell phone, Sheriff Burgess directed Ms. Mason to call his private line at the Sheriff's Office in Custer County.  During telephone calls between Ms. Mason and Sheriff Burgess on Sheriff Burgess' private line at the Sheriff's Office in Custer County, Sheriff Burgess would arrange for and require one or more of the sexual favors referred to herein.

41.  On one occasion within the statute of limitations Sheriff Burgess called Ms. Mason and demanded that she drive to the Biltmore Hotel in Oklahoma City and meet him at his hotel, so that he could have required sexual favors.  The demand included the threat that unless she did so, he would cause her to be removed from the Drug Court program and sent to prison.  Ms. Mason complied with the demand, fearing the consequences if she did not.  Ms. Mason̓s driving to Oklahoma City for any purpose was a violation of the conditions of her Drug Court program participation, as Sheriff Burgess well knew, because those conditions prohibited driving outside Custer County without specific permission to do so, which neither she nor Sheriff Burgess had the authority to allow.

42. On another occasion, in December 2006,  the drug court program for the State of Oklahoma was to be showcased to members of the Oklahoma State Legislature in Oklahoma City on "Drug

Court Day," through presentations to them by participants in the Drug Court program, including Ms. Mason.  The night before Ms. Mason and other Drug Court participants from around the State met the legislators the following day in Oklahoma City, Sheriff Burgess called Ms. Mason and demanded that she drive to Oklahoma City and meet him at his hotel, so that he could have the degrading and humiliating sexual favors he demanded.  Ms. Mason complied with the demand, fearing the consequences if she did not.  Ms. Mason's driving to Oklahoma City for any purpose was a violation of the conditions of her Drug Court program participation, as Sheriff Burgess well knew, because those conditions prohibited driving outside Custer County without specific permission to do so, which neither she nor Sheriff Burgess had the authority to allow.

43.  Over the past several months, Sheriff Burgess has required Ms. Mason to drink alcohol in his presence, as part of his overall conduct in requiring Ms. Mason to perform sexual favors. Sheriff Burgess knew that such conduct is a violation of the conditions of Ms. Mason's Drug Court program participation.

44.  Throughout the statute of limitations Sheriff Burgess has engaged in sexual harassment of Ms. Mason in countless telephone calls, as well as in person, all under the threat of causing her to be sent to prison unless she tolerated his extreme sexual slavery, including sexual battery, sodomy, rape, and blackmail.

45.  Ms. Mason's usage of alcohol has caused her severe emotional distress, psychological damage and personal humiliation, and has substantially interfered with her ability to make progress in the Drug Court program.

46.  As the result of Sheriff Burgess' depraved conduct set forth above, Ms. Mason has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

47.  In approximately May of 2006, employees of Sheriff Burgess (a) offered cigarettes to female inmates who would flash their breasts, and (b) conducted wet T-shirt contests so that female inmates' breasts would be more visible through clothing.  One inmate was required to exchange sexual favors for cigarettes.

48.    In May 2006, Ivette Figueroa was an inmate in the Custer County jail.  An older jailer, in his 40's, tall and skinny, wearing glasses, whom Ms. Figueroa believes is named "Jerry," committed sexual battery on Ms. Figueroa by pressing her body to his, touching her sexual organs and pressing his erect penis on her body.

49.    Ms. Figueroa resisted the sexual advances described in Paragraph 48.  As a result, Ms. Figueroa was retaliated against, by being denied her medications and placed in lockdown for approximately one week.

50.    For further retaliation, Ms. Figueroa (and others) was served food causing rectal bleeding.  Ms. Figueroa then subsisted on bread and water for the remainder of her stay in lockdown, in fear of continuing retaliation through tainted food.

51.    As a result of the conduct of the jailer set forth above, Ms. Figueroa has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

52.  Several months prior to the date of this Complaint, on the night when Sheriff  Burgess was taking Brenda Brown to the Custer County Jail for violation of conditions imposed by the Drug

Court, he successfully blackmailed Ms. Brown by threatening her that she needed to sodomize him in return for his causing the Drug Court to impose substantially less harsh punishment than she would otherwise receive.  In addition,  Sheriff Burgess committed sexual battery on Ms. Brown, and verbally sexually harassed her.

53.  On several subsequent occasions Sheriff Burgess, after threatening Ms. Brown that she would go to prison unless she consented, and/or after threatening Ms. Brown that he would cause her daughter to go to prison unless she consented, required Ms. Brown to perform various sex acts.

54.  As a result of Sheriff Burgess' conduct set forth above, Ms. Brown has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

55.  Beginning in the Spring of 2006, and over a period of time thereafter, Sheriff Burgess repeatedly subjected Melissa Espinosa to acts of sexual battery and to threats of same.  During and after that period of time, Sheriff Burgess subjected Ms. Espinosa to psychological manipulation concerning her "owing" him sexual favors because of what he claimed he had done for her in his official capacity as sheriff.

56.  As a result of Sheriff Burgess' conduct set forth above, Ms. Espinosa has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

57.  During a two week period in May 2006, Sheriff Burgess' employees at the Custer County Jail, Ron, Michael and Jim, required Regenia Oldbear to display her breasts to avoid punishment.

In addition, Rivers, an employee of Sheriff Burgess' at the Custer County Jail, required Ms. Oldbear to engage in sexual touching of him, also to avoid punishment.

58.  As a result of Sheriff Burgess' employee's conduct set forth above, Ms. Oldbear has suffered severe emotional distress and/or significant pain and suffering and/or personal humiliation.

59.  Over a period of slightly less than 60 days in the Spring of 2006, Sheriff Burgess' employees at the Custer County Jail, particularly Jim Cook, required Kerri Jennings to display her breasts in order to have food delivered timely and to have medicine provided, among other matters.  In addition, sexual comments and innuendoes were rife, jailers watched Ms. Jennings and others while they were showering and while they got dressed, required lewd dancing by one female inmate, refused to allow Ms. Jennings and others to wear bras but instead to wear t-shirts, and Jim Cook inappropriately hugged Ms. Jennings, all of which caused Ms. Jennings to fear being raped.

60.  As a result of Sheriff Burgess' employees' conduct set forth above, Ms. Jennings has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

61.  Kimberly Summers was in the Custer County Jail in 2007.  In order to obtain additional quantities of food, aspirin, and cooler clothing, Ms. Summers was required by "Jerry," an employee of Sheriff Burgess, to bare her breasts, both for just that jailer and for male inmates.

62.  As a result of Sheriff Burgess' employee's conduct set forth above, Ms. Summers has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

63.  Dawn Rodgers was in the Custer County Jail within the statute of limitations.    While she was there, Brandon Turney, a jailer, required Ms. Rodgers and others to flash their breasts and stood around until they did it, or otherwise he would make noise and not allow the inmates to sleep.

64.  While she was in the Custer County Jail, Ms. Rodgers and others were required to change clothes and take showers while male jailers ogled them.

65.  While she was in the Custer County Jail, jailer Brandon Turney would talk on the intercom about sexual acts in general, and sexual acts which he wanted performed on him.

66.  While she was in the Custer County Jail, Ms. Rodgers was denied medicine and personal hygiene items unless she flashed her breasts.

67.  As a result of Sheriff Burgess' employees' conduct set forth above, Ms. Rodgers has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

68.  In late July or early August 2006, when Dena Estrada was an inmate of the Custer County Jail, Sheriff Burgess' employee, one Richardson, took Ms. Estrada from the Custer County Jail to an appearance in Drug Court in Custer County.  In the courthouse elevator on the way to the courtroom, Richardson said to Ms. Estrada words to this effect: "Oh, my!  You don't have a bra on. Man, I'd give twenty bucks just to look underneath there."  Ms. Estrada was embarrassed, humiliated and scared by these remarks, because of what she knew was permitted to be done by Sheriff Burgess' employees.  She had been denied the opportunity to wear a bra because her own had wires in it.  She was not supplied one without wires.

69.  After her court appearance, when Ms. Estrada was being placed in the van by Richardson, she was handcuffed with her hands behind her back, contrary to past practice of her being handcuffed with her hands in the front.  Instead of being placed in the front of the van as had been done previously, Ms. Estrada was told by Richardson to get in the back of the van, and he would "strap her in."  Instead of strapping her in, Richardson proceeded to grope her breasts with both hands.

70.  As a result of Richardson's conduct set forth above, Ms. Estrada has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

71.  In July 2006, Richardson, during the course of transporting Jennifer Slinkey, committed sexual battery on Ms. Slinkey by pulling off onto an isolated road, climbing into the back seat of the car, where Ms. Slinkey was located, groping her groin and her breasts, and attempting to have sexual relations with her.

72.  As a result of Richardson's conduct set forth above, Ms. Slinkey has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

73.  Starting in the middle of February 2006, Teresa Chagolla was in the Custer County Jail. While there, Jim Cook, a jailer, sexually harassed Ms. Chagolla by touching her breasts, telling her that flipping her shirt up to expose her breasts was "the way we get things done around here," by standing outside the jail cell, leering, when she would get out of the shower, and by "rating" her breasts on a scale of 1 to 10.

16

74.  While Ms. Chagolla was in the Custer County Jail, Jim Cook brought a new jailer to the women's cell, and said "Let's give him a big welcome—like the Custer County women do," and required the female inmates to expose their breasts.

75.  As a result of Sheriff Burgess' employee's conduct set forth above, Ms. Chagolla has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

76.  In November and December 2006 Sheriff Burgess required Kimberly Smith, an inmate of the Custer County Jail, to sodomize him on two occasions.  Sheriff Burgess made Ms. Smith a female trusty.  When, on the third occasion when Sheriff Burgess demanded sodomy from Ms. Smith and she refused, Sheriff Burgess fired her as female Trusty.  Immediately thereafter, Sheriff Burgess replaced Ms. Smith as female Trusty with another inmate of the Custer County Jail who informed Ms. Smith that she was having sexual relations with Sheriff Burgess and was performing sodomy on him.

77.  As a result of Sheriff Burgess' conduct set forth above, Ms. Smith has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

78.  Suzanne Renee Elliott was in the Custer County Jail between March 2007 and October 2007. While she was there, Jerry Woods, and other jailers, required Ms. Elliott and others to flash their breasts and would retaliate against her and others if they did not.

79.  While she was in the Custer County Jail, Ms. Elliott was denied her prescription medicines, ice, sanitary napkins, toilet paper and other personal hygiene items unless she flashed her breasts.

17

80.  Sheriff Burgess and his employees were deliberately indifferent to a known medical need of Ms. Elliott, to-wit, her medical need for anti-depressive and high blood pressure medications.

81.  While she was in the Custer County Jail, Ms. Elliott's orange jumpsuit was taken away and she was required to wear a flimsy white "muscle" t-shirt and boxer shorts for the visual pleasure of the male jailers and trustys and required to participate in "wet t-shirt" contests.

82.  While in the Custer County Jail, Ms. Elliott was retaliated against by being placed in an isolation cell, stripped naked, and given as her only clothing an extremely short, flimsy, see-through, open paper "gown" that exposed her breasts and private parts.

83.  While Ms. Elliott was in the isolation cell, the temperature was kept "freezing cold" and she was denied a mattress so that she had to sleep on the hard, frigid, concrete floor in an essentially naked state.

84.  While she was in the isolation cell, Jerry Woods and other male jailers and inmate trustys would take turns peering through the small "bean hole" in the cell door ogling her, taunting her to show them her bare breasts, and watching her use the toilet.

85.  While in the isolation cell, Ms. Elliott's was given only a small jug of water for hydration.

86.  While in the isolation cell, Ms. Elliott's was required to take showers in the male trustys' shower stall, which had no shower curtain, so the jailers and trustys would all stand around and watch her.

87.  Ms. Elliott's essentially undressed condition and harassment was perpetuated for a period of several days before it finally ended.

88.  As a result of Sheriff Burgess' employees' conduct set forth above, Ms. Elliott has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.  She still has nightmares today about her ordeal.

89.  Tammie Baca was in the Custer County Jail between late June 2006 and November 2006. While she was there, Jerry Woods, and other jailers required Ms. Baca and others to flash their breasts and would retaliate against her and others if they did not.

90.  While she was in the Custer County Jail, Ms. Baca was denied her prescription medicines, ice, sanitary napkins, toilet paper and other personal hygiene items unless she flashed her breasts.

91.  While in the Custer County Jail, Ms. Baca was retaliated against by being placed in an isolation cell, stripped naked, and left in the cell for days.

92.  While Ms. Baca was in the isolation cell, the temperature was kept "freezing cold" and she was denied a mattress so that she had to sleep naked on the hard, frigid, concrete floor.

93.  While she was in the isolation cell, Jerry Woods would open the door and just stand there looking at her naked.  Other male jailers and inmate trustys would take turns peering through the small "bean hole" in the cell door ogling her.

94.  Jailer Jeff "Robo Cop" would stare and watch Ms. Baca use the toilet.

95.  While in the isolation cell, Ms. Baca was required to take showers in a shower stall which had no shower curtain, and the jailers and trustys would all stare and watch her.

96.  After Ms Baca was finally released from the isolation cell on a "suicide watch," jailer Brandon Turney would not call Red Rock for medical treatment.

97.  While in the Custer County Jail, Ms. Baca wrote a letter to Sheriff Mike Burgess detailing her ordeal and the conditions and harassment going on with the women inmates.  Ms. Baca saw the letter in Sheriff Burgess' hand when he pulled her out of her cell and had Ms. Baca immediately transferred to the Weatherford jail.  Sheriff Burgess never acknowledged or responded to the complaints Ms. Baca made.

98.  As a result of Sheriff Burgess' employees' conduct set forth above, Ms. Baca has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

99.  Sheriff Burgess and his identified employees were deliberately indifferent to the Constitutional rights of Plaintiffs set forth herein, by and through their identified acts.

## FIRST CAUSE OF ACTION

100.  Paragraphs 1-99 are re-alleged.

101.  Pursuant to 42 U.S.C. § 1983 the Sheriff of Custer County in his official capacity is liable for damages to each of the Plaintiffs, as determined by a jury, as well as for attorney fees, costs of this action, interest as provided by law, and such other relief as is just and proper.

WHEREFORE, Plaintiffs pray for judgment against the Sheriff of Custer County in his official capacity, as follows:

A.     For an award of compensatory damages in an amount to be determined by a jury.

B.     For reasonable attorney fees, the costs of this action, interest as provided by law and for all other relief this Court deems just and proper.

s/R. Thomas Seymour, OBA No. 8099
R. Thomas Seymour, OBA No. 8099
Scott A. Graham, OBA No. 19817
**SEYMOUR & GRAHAM LLP**
100 West Fifth, Suite 550
Tulsa, OK  74103-4288
Telephone (918) 583-5791
Facsimile   (918) 583-9251

20

and

<u>s/R. Thomas Seymour, OBA No. 8099 for</u>
<u>Gregory P. Williams, with permission</u>
Gregory P. Williams, OBA No. 9647
D. Mitchell Garrett, OBA No. 20704
**GARRETT LAW OFFICE, P.C.**
111 W. 5th Street, Suite 800
Tulsa, OK  74103
Telephone (918) 549-6743
Facsimile   (918) 549-6741

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 1st day of July 2008, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF Registrants:

Chris Collins, Esq.
Collins, Zorn & Wagner, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK  73105
cjc@czwglaw.com

**ATTORNEY FOR DEFENDANT**

<u>s/ Scott A. Graham</u>
Scott A. Graham